UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

          -against-

LUIS BELLO,

                  Defendant..

**MEMORANDUM & ORDER**

**13-CR-559 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

     Defendant Luis Bello brings two motions for a reduction in sentence, the first under 18 U.S.C. § 3582(c)(1)(A)(i) and the second under 18 U.S.C. § 3582(c)(2) pursuant to Amendment 821. (*See* Mot. for Compassionate Release ("First Mot.") (Dkt. 173); Amendment 821 Mot. ("Second Mot.") (Dkt. 177).) For the reasons set forth below, the court finds that Mr. Bello has not demonstrated extraordinary and compelling reasons warranting a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) nor has he met the standard for a reduction of sentence under U.S.S.G Amendment 821. Mr. Bello's motions for a reduction in sentence are therefore DENIED.

## I.   BACKGROUND

### A.   Criminal Conduct and Breach of Cooperation Agreement

Mr. Bello was the leader of a drug trafficking organization that brought more than 1,000 kilograms of cocaine from Puerto Rico and the Dominican Republic to New York between the years 2009 and 2013. (*See* Sentencing Transcript ("Sent'g Tr.") (Dkt. 154) at 19:18-20:19; *see also* Indictment (Dkt. 4) ¶ 1; Presentence Investigation Report ("PSR") ¶ 3.) He was arrested on September 18, 2013, while he was in a vehicle that carried 8 kilograms of cocaine, 10 false identification cards, and multiple

drug ledgers. (PSR ¶ 26.) He subsequently pleaded guilty pursu-
ant to a cooperation agreement on July 10, 2014, to three
counts: (1) conspiring to distribute more than 5 kilograms of
cocaine; (2) conspiring to launder money; and (3) trafficking in
firearms. (*See generally* Plea Tr. (Dkt. 160-6); Cooperation
Agreement (Dkt. 160-5); *see* PSR ¶ 1.) Mr. Bello was then sen-
tenced to 20 years' imprisonment. (Judgment (Dkt. 130) at 2;
Sent'g Tr. at 33:20-34:3.)

Under the terms of Mr. Bello's Cooperation Agreement, the
Government would, if Bello cooperated fully, file a motion pur-
suant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), permitting
this court to impose a sentence below any applicable mandatory
minimum sentence. (Cooperation Agreement ¶ 6.) The agree-
ment was contingent on the Government determining that Mr.
Bello "cooperated fully, provided substantial assistance to law
enforcement authorities and otherwise complied with the terms
of [the plea agreement.]" (*Id.*) Those terms included not com-
mitting or attempting to commit any further crimes. (*Id.* ¶ 8.)
Mr. Bello accepted this Cooperation Agreement and provided
some information that was "very helpful to the [G]overnment."
(Sent'g Tr. at 21:7-18; *see also* Gov't Sent'g Mem. (Dkt. 126) at
5-6.)

However, while in pretrial custody at the Metropolitan Deten-
tion Center in Brooklyn ("MDC"), Mr. Bello breached his
Cooperation Agreement. (Sent'g Tr. at 21:19-24:12; *see also*
Gov't Sent'g Mem. at 6-8.) Specifically, he worked with his wife
to pay for information to provide to the Government, concealed

these payments,[1] intimidated a government witness,[2] dealt drugs while at the MDC, possessed a cellphone which he used to contact a co-defendant while at the MDC, and possessed a weapon while at MDC. (Gov't Sent'g Mem. at 6-8; Sent'g Tr. at 9:14-10:23, 21:19-24:12; PSR ¶¶ 43-44.)

These actions not only breached Mr. Bello's Cooperation Agreement, but they also jeopardized the Government's ability to prosecute the individual who took over Mr. Bello's organization and his drug supplier. (Sent'g Tr. at 22:16-23:25; Gov't Sent'g Mem. at 8.) This breach also prevented the Government from prosecuting any additional targets that may have been found through additional cooperation by Mr. Bello. (Sent'g Tr. at 22:16-23:25.) Their case against these targets was, at that point, primarily based on Mr. Bello's testimony, but the sanctions made the Government unable to use Mr. Bello as a testifying witness. (Sent'g Tr. at 23:5-25.) Even if Mr. Bello remained willing to testify and provided information on the targets' criminal activity, the Government no longer felt confident in asking a jury to credit Mr. Bello's testimony as a cooperating witness when he purchased information to provide to the Government to get cooperation credit and then lied to the Government about it. (*Id.*)

---

[1] Mr. Bello received a phone number for a source from an inmate who believed the source would give him information to use for cooperation credit. (Gov't Sent'g Mem. at 6-8.) He then gave this number to his wife who paid about $20,000 to the source to give her information, and she gave this information to the Government under the pretense that she received this information from her cousin. (*Id.*) When the Government learned about this scheme, they asked Mr. Bello to not speak to his wife, but he ignored this instruction. (*Id.*)

[2] The Government did not bring forward the witness who claimed to have been threatened. (Gov't Sent'g Mem. at 8.) During the sentencing hearing, the Defense asked that the Court discount this threat because of this. (Sent'g Tr. at 10:5-11.)

B.   **Sentencing**

With the void Cooperation Agreement, Mr. Bello was sentenced to 20 years in prison, below the Sentencing Guidelines range of life imprisonment. (Sent'g Tr. at 33:14-34:3; *see also* PSR ¶ 109.) He received an adjustment for having an aggravating role and for being a leader in the cocaine distribution conspiracy. (PSR ¶¶ 48, 50).

At sentencing, Mr. Bello shared that he was remorseful and regretted the actions he took that voided his Cooperation Agreement. (*Id.* at 27:15-23.) He discussed how he had been depressed and how his family life was facing troubles. (*Id.* at 27:25-28:7.) Mr. Bello's defense attorney compared the severity of Mr. Bello's breaches to his Cooperation Agreement versus the severity of other types of breaches. (*Id.* at 12:4-9.) He also discussed the lower sentences of Mr. Bello's co-defendants and how Mr. Bello should receive a similarly low sentence as to not cause any sentencing disparities. (*Id.* at 14:17-15:5.) Further, he mentioned Mr. Bello's substantial assistance to the Government, noting that although he breached his agreement, how he was one of the first defendants in this scheme to plead guilty causing a "waterfall effect" where everyone afterwards pled guilty as well. (*Id.* at 15:6-19.) He asked that all these things be factored into the court's sentence and that a sentence of ten years would be most appropriate. (*Id.* at 18:1-12.)

The Government noted that some of the information from Mr. Bello was very helpful and agreed that the court should consider this assistance as part of the sentencing. (*Id.* at 21:7-18.) However, the Government also spoke about the significance of the breach of his cooperation agreement. (*Id.* at 21:19-25:21.)

The court considered the circumstances of Mr. Bello's cooperation as well as the breach of the Cooperation Agreement when sentencing Mr. Bello, noting that the breach had "significant collateral consequences" and that it was something that the

"court cannot overlook" in combination with the other sentencing factors. (*Id.* at 16:4-13, 32:22-33:5, 36:6-14.) The court noted, in particular, how the government was unable to prosecute two high level targets due to this breach. (*Id.* at 16:4-13) And the court was not convinced by the argument that Mr. Bello's breaches were fairly minor in that they did not go to the issue of honesty. (*Id.* at 12:4-14.)

### C.   Compassionate Release Motion

In July 2023, after serving approximately 10 years in custody, Mr. Bello filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (*See generally* First Mot.) Mr. Bello argues that five sets of circumstances, when viewed together, create extraordinary and compelling reasons that warrant a reduction in his sentence to time served: (1) his challenging upbringing; (2) the disparity in sentencing between himself and his codefendants; (3) his substantial assistance to the Government, (4) his ineligibility for time credits under the First Step Act due to his noncitizen status, and (5) his post-conviction rehabilitation. (*Id.* at 14-19.)

While this motion was pending, Mr. Bello filed an additional motion for compassionate release in May 2024, requesting a reduction in sentence under Amendment 821 to the United States Sentencing Guidelines. (*See generally* Second Mot.)

## II.  DISCUSSION

### A.   Extraordinary and Compelling Reasons Under 18 U.S.C. § 3582(c)(1)(A)

#### 1.   Legal Background

Today's compassionate release (or sentence reduction) statute was first enacted as part of the Comprehensive Crime Control Act of 1984. *United States v. Brooker*, 976 F.3d 228, 231

(2d Cir. 2020). As amended in 2018, the statute authorizes a district court to "reduce the term of imprisonment" for a defendant who meets three requirements: administrative exhaustion, extraordinary and compelling reasons warranting a reduction in sentence, and a demonstration that the reduction in sentence is warranted after consulting the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.

### a.   Administrative Exhaustion

The original statute gave the Bureau of Prisons ("BOP") exclusive power to bring motions for compassionate release, a power the BOP used sparingly. *Brooker*, 976 F.3d at 231. The First Step Act of 2018 expanded the ability to bring motions to defendants if the "BOP either declines to support or fails to act on that defendant's motion." *Brooker*, 976 F.3d at 233. Specifically, a defendant may move for compassionate release only after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

### b.   Extraordinary and Compelling Reasons Warranting Release

After exhausting administrative appeals with the Bureau of Prisons ("BOP"), the defendant must then demonstrate that "extraordinary and compelling reasons" warrant a reduction in sentence. *Id.* § 3582(c)(1)(A)(i).

On November 1, 2023, a Sentencing Commission Policy Statement providing an updated definition of "extraordinary and compelling reasons" became effective. *See* U.S. Sent'g Guidelines ("U.S.S.G.") § 1B1.13 (amended Nov. 1, 2023). The latest definition was meant to accord with the First Step Act's purpose

6

of "increasing the use of sentence reduction motions under sec-
tion 3582(c)(1)(A)." *See* United States Sent'g Commission,
*Amendments to the Sentencing Guidelines, Policy Statements, Offi-
cial Commentary, and Statutory Index* at 6, [hereinafter "Nov. 1,
2023 Amendments to U.S.S.G."] (citing First Step Act §
603(b)).

The Policy Statement first provides specific examples of what
establishes an extraordinary and compelling reason. These ex-
amples include those premised on: (1) a defendant's medical
circumstances, U.S.S.G. § 1B1.13(b)(1); (2) a defendant's age,
*id.* § 1B1.23(b)(2); (3) a defendant's family circumstances, *id.* §
1B1.23(b)(3); (4) abuse suffered by the defendant while in cus-
tody, *id.* § 1B1.23(b)(4). Each example includes specific
requirements that, when met, would allow a reduction in sen-
tence if warranted after the court reviews the 28 U.S.C. §
3553(a) factors.

The new definition also includes a catch-all provision authoriz-
ing the court to consider "Other Reasons" that demonstrate
extraordinary and compelling reasons warranting a reduction in
sentence. U.S.S.G. § 1B1.13(b)(5). Under this provision a sen-
tencing court may find that this standard is met if "[t]he
defendant presents any other circumstance or combination of
circumstances that, when considered by themselves or together
with any of the reasons described in paragraphs (1) through
(4), are similar in gravity to those described in paragraphs (1)
through (4)." *Id.* This provision affords the district court signifi-
cant discretion to determine when a reduction in sentence is
warranted. *See United States v. Donato*, No. 03-CR-929, 2024
WL 665939, at *3 (E.D.N.Y. Feb. 16, 2024); *United States v.
Antney*, No. 17-CR-229 (CBA), 2021 WL 4502478, at *1
(E.D.N.Y. Sept. 20, 2021) (citing *Brooker*, 976 F.3d at 237);
*United States v. Vasquez*, No. 96-CR-1044 (HG), 2024 WL
2385264, at *3 (E.D.N.Y. May 23, 2024).

7

c.   *The 3553(a) Factors*

After finding the defendant has met the administrative exhaustion and extraordinary and compelling reasons requirements, the court must consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether and to what extent a reduction in sentence is warranted. *Id.* § 3582(c)(1)(A).

2.   Application: Administrative Exhaustion

There is some debate as to whether Mr. Bello exhausted his administrative remedies with the BOP. In its opposition brief, the Government asked that Mr. Bello provide the request for compassionate release or response from the warden to demonstrate he meets the administrative exhaustion requirement. (Government Response to Opposition ("Opp.") (Dkt. 175) at 6.) Mr. Bello did just that in his reply, attaching the response to his request from the warden. (*See* Reply to Govt. Response ("Reply") (Dkt. 176) at ECF 1, 10.) The letter from the warden, however, states that "if you are not satisfied with this response, you may appeal through the Bureau of Prisons, Administrative Remedy Process by obtaining an Informal Resolution form through your Correctional Counselor." (*Id.*)

District courts in this Circuit have disagreed as to whether the administrative exhaustion is met in these circumstances. *See United States v. Saladino*, 7 F.4th 120, 123-24 (2d Cir. 2021) (collecting cases). Some have found that the appeal must continue after the warden's response, while others do not require this and find that an "inmate must '*either* … exhaust administrative remedies *or* simply … wait 30 days after serving his petition on the warden of his facility before filing a motion in court.'" *Id.* (quoting *United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020).) The Second Circuit, in reviewing this split, chose not to draw the line in terms of administrative exhaustion for motions of compassionate release. *Id.* The Circuit ultimately held that

since the Government, in *Saladino*, no longer asserted the exhaustion requirement as a defense, the defendant was allowed to proceed with his motion even if he had not complied with that requirement. *Id.*

Here, the Government merely asked that Mr. Bello provide proof that he had indeed made an application to the warden, stating that doing so would "demonstrate that he has satisfied his requirement of exhausting his administrative remedies." (Opp. at 6.) Mr. Bello did so. (Reply at ECF 10.) Because the Government does not contest this issue, the court will consider whether Mr. Bello is able to meet the other requirements.

### 3. Application: Extraordinary and Compelling Reasons

Mr. Bello argues that five circumstances, when viewed together, establish extraordinary and compelling reasons warranting a reduction in his sentence under 18 U.S.C. § 3582(c)(1)(A). Specifically, Mr. Bello points to (1) the difficulties in his upbringing forcing him into a life of crime; (2) the stark sentencing disparity with some of Mr. Bello's co-defendants; (3) Mr. Bello's cooperation efforts to help the Government; (4) Mr. Bello's non-citizenship status causing his ineligibility to early release programs; and (5) his post-conviction rehabilitation over the past 10 years. (*See generally* First Mot.)

When considering the factors together, the court finds that they do not establish "extraordinary and compelling reasons" that warrant a reduction in his sentence. *See* 18 U.S.C. § 3582(c)(1)(A)(i); U.S.S.G. § 1B1.13(b)(5).

### a. *Defendant's Upbringing*

Mr. Bello first discusses his difficult upbringing. Mr. Bello notes that he was not raised by his parents. (First Mot. at 2; *see also* PSR at ¶ 83.) It wasn't until he was around 11 years old that he was sent from Dominican Republic, where he lived with his

grandmother, to Puerto Rico to live with his mother. (First Mot. at 3; *see also* PSR at ¶ 83.) The different towns Mr. Bello lived in while in Puerto Rico were known for their crime rates in relation to drugs and gang violence and the only way to support his lower-class family was to join this lifestyle. (First Mot. at 3) He tried to better himself by moving to New York to live with his stepmother, but his stepmother pushed him back into a criminal lifestyle by threatening to kick him out of her house if he did not. (*Id.*)

It is within the court's discretion to consider upbringing as relevant, alongside other factors, when evaluating whether to grant a motion for sentence reduction. *See, e.g., United States v. Glynn*, No. 06-CR-580 (JSR), 2022 WL 562652, at *4 (S.D.N.Y. Feb. 24, 2022); *United States v. Ramsay*, 538 F. Supp. 3d 407, 424-25 (S.D.N.Y. 2021); *United States v. Ramirez*, 571 F. Supp. 3d 40, 52 (S.D.N.Y. 2021). This is particularly significant when the defendant committed the relevant offense at a young age and their upbringing was directly connected to the relevant offense. *See, e.g., Glynn*, 2022 WL 562652, at *4 (noting the defendant's relative youth and twenty years old as especially relevant in light of defendant's rehabilitation over his twenty years in custody); *Ramsay*, 538 F. Supp. 3d at 424-25 (noting that the abuse and neglect defendant suffered as a child counseled against the life sentence for conduct committed when the defendant was 18 years old); *Ramirez*, 571 F. Supp. 3d at 52 (considering defendant's age of 19 years old at the time of conviction as a factor).

Here, the court considers Mr. Bello's upbringing relevant, especially when considered alongside his demonstrated rehabilitation discussed below. However, Mr. Bello committed the conduct when significantly older than the defendants in *Glynn, Ramsay* and *Ramirez*, as the head of a criminal organization with significant operations, and he continued to engage in

criminal conduct even after his guilty plea. In Mr. Bello's case, his upbringing provides relatively little support for Mr. Bello to meet his burden to demonstrate that extraordinary and compelling reasons warrant a reduction in his sentence.

### b.   Disparity in Sentences

The second circumstance Mr. Bello raises are the lower sentences imposed on other members of the criminal organization headed by Mr. Bello. These other members were charged with conspiracy to possess with intent to distribute five or more kilograms of cocaine, money laundering, and trafficking firearms. (First Mot. at 4.) One member, Joel Aguilar, received a sentence of six years on February 13, 2017; another, Carlos Bello Tirado, received a sentence of four years on August 4, 2013. (Judgment as to Joel Aguilar (Dkt. 118); Judgment as to Carlos Bello Tirado, *United States v. Sanchez et al.*, 16-CR-309, Dkt. 89.) These sentences compare to Mr. Bello's sentence of 20 years. (*See generally* Judgment.)

Courts have considered sentencing disparities when determining whether extraordinary and compelling reasons warrant a reduction in sentence. *See United States v. Russo*, 643 F. Supp. 3d 325, 332-34 (E.D.N.Y. 2022) (considering sentencing disparities relevant when the offense conduct of those with harsher sentences was "no less violent or destructive" than those that received more lenient sentences, even if the *charged* conduct differed); *United States v. Haynes*, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020) (finding disparities between defendant and codefendants, in part caused by change in law and decision to go to trial, relevant to the extraordinary and compelling reasons analysis).

Here, however, there are reasons that Mr. Bello's sentence significantly exceeded the sentences of his co-defendants. Mr. Bello was the head of the drug organization and, although he had a plea deal for a potentially lighter sentence, he broke the

11

terms of the agreement. (PSR ¶¶ 3, 9; Sent'g Tr. at 19:18-20:2, 24:1-12; Gov't Sent'g Mem. at 6-8.) His leadership position, among other factors, are what lead to the court sentencing him to 20 years imprisonment, a sentence higher than other members of the organization but still below the Guideline sentence of life imprisonment. Thus, the purported disparity in Mr. Bello's sentencing provides little support in finding an extraordinary and compelling reason.

### c. Defendant's Cooperation Efforts

Mr. Bello next argues that his cooperation efforts before and after sentencing constitute an extraordinary and compelling circumstance that merits a reduction in sentence. (*See* First Mot. at 5-7.) He argues that giving information of ongoing criminal conduct prior to his sentencing helped the Government immensely and that the information he provided was done at significant risk to his own safety and his family's safety. (*Id.*) As discussed *supra*, while he provided very useful information to the Government, he ultimately breached this agreement prior to his sentence which led to the inability to use Bello as a witness, jeopardizing multiple Government investigations.

While cooperation may in some circumstances support a finding that extraordinary and compelling reasons exist for some defendants, it does not in Mr. Bello's case. At sentencing, the court was aware of the extent of Mr. Bello's cooperation and breach and took these factors into account when imposing a sentence significantly below the guidelines. Mr. Bello's cooperation thus does not support a reduction in sentence.

### d. Defendant's Non-Citizenship Status Ineligibility

Mr. Bello argues that, since he is not a citizen, his ineligibility for programs that might give him time credits to reduce his sentence under the First Step Act supports finding an extraordinary

12

and compelling circumstance to support a reduction in sentence. (First Mot. at 19 (citing *United States v. Khan*, No. 18-CR-830 (VSB), 2023 WL 2911021, at *3 (S.D.N.Y. Apr. 11, 2023).) While ineligibility for programs is not sufficient on its own to show that extraordinary and compelling reasons warrant a reduction in sentence, it may provide strong support for rehabilitation. *See Khan*, 2023 WL 2911021, at *3-5 (discussing the defendant's participating in programs despite his ineligibility as a demonstration of his commitment to rehabilitation). The court thus considers Defendant's ineligibility for time credits when reviewing his rehabilitation.

### e.   Defendant's Rehabilitation

Mr. Bello argues that his record of rehabilitation supports a reduction in sentence. He has made significant efforts to better himself while incarcerated, including by attending 59 programs while in custody despite an ineligibility for time credits for attending these programs. (First Mot. at 15, 19.) These programs include those focused on math, stress management, career exploration, behavior modification, and resume management. (*Id.* at ECF 25-26 (listing programs).) His behavior post sentencing appears to have been unproblematic. (*Id.* at 5, 7.) He claims to have had a few minor incident reports throughout his incarceration, and that his work record and prison conduct record remain excellent. (*Id.* at 7.) Mr. Bello provides letter from family in support of his rehabilitation. (*Id.* at ECF 27-34.) These letters note, among other things, Mr. Bello's growth during his period of incarceration, his attentiveness to his family and how his release would benefit his family. (*See generally id.*)[3]

---

[3] Mr. Bello also states that there are two staff members in FCI Allenwood-Medium, where he is housed, that would support his request for compassionate release. (*Id.* at 15.) But, as the Government notes, it is Mr. Bello's burden to provide letters to demonstrate support from these staff members

While rehabilitation is often considered by courts alongside other factors, the only statutory restriction on what may be considered extraordinary and compelling is that rehabilitation alone is not enough to provide an extraordinary and compelling reason under § 3582(c)(1)(A). *See Brooker*, 976 F.3d at 237-38 (citing 28 U.S.C. § 994(t)); *United States v. Price*, No. 05-CR-492 (NGG), 2023 WL 4850995, at *2 (E.D.N.Y. July 28, 2023). The court acknowledges Mr. Bello's efforts at rehabilitation and considers them when evaluating the totality of the circumstances to determine whether Mr. Bello meets the extraordinary and compelling reasons standard. *See Khan*, 2023 WL 2911021, at *3-4 (noting that rehabilitation alone shall not be considered an extraordinary and compelling reason but that it may be considered alongside other factors when determining whether the standard is met). However, for the reasons discussed, Mr. Bello does not point to other circumstances that provide more than minimal support for a finding that he met his burden to show that a reduction in sentence is warranted. While impacts from citizenship status and a challenging upbringing are relevant factors for the court's consideration, Mr. Bello has not put forward evidence that they are compelling in his case. And his apparent progress toward rehabilitation does not outweigh the dearth of other support for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).

In sum, when considering the combination of circumstances presented by Mr. Bello, the Court finds that he has not

---

and he has not done so. (*See* Opp. at 10). In his Reply, Mr. Bello requests the court to contact these officers. (Reply at 6.) However, for the reasons discussed, even with these letters, Mr. Bello's rehabilitation would not meet the standard for extraordinary and compelling reasons warranting a reduction in sentence without more. Thus, the court denies this request.

shown that extraordinary and compelling reasons warrant a reduction in his sentence. His motion under 18 U.S.C. § 3582(c)(1)(A) is therefore DENIED.[4]

### B.  U.S.S.G. Amendment 821

#### 1.  Legal Background

On November 1, 2023, Amendment 821 to the Sentencing Guidelines went into effect. The Amendment, *inter alia*, altered the guidelines calculation for "zero point offenders," reducing the offense level for defendants that meet requirements relating to their criminal history and aggravating factors specific to the instant offense. *See* Amendment 821, § 4C1.1(a), U.S.S.G. § 4C1.1. A requirement relevant here is that "the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848." Amendment 821, § 4C1.1(a)(1), U.S.S.G. § 4C1.1(a)(10). The amendment is retroactive, allowing for a reduction in sentence for defendants that meet these requirements. *See United States v. Smerling*, No. 21-CR-317 (DLC), 2024 WL 1208908, at *2 (S.D.N.Y. Mar. 21, 2024).

#### 2.  Application

Mr. Bello's relevant offense conduct included his role as a leader in a drug trafficking organization which resulted in an Aggravating Role adjustment to his offense level under U.S.S.G. § 3B1.1(a). (*See* PSR ¶¶ 8, 50.) Because a sentence reduction under Amendment 821 is not available to defendants who received an Aggravating Role adjustment, Amendment 821, § 4C1.1(a)(10),

---

[4] As the court has concluded that Mr. Bello has failed to show extraordinary and compelling reasons warranting a reduced sentence, it declines to reach whether the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of release. *See United States v. Aiello*, No. 05-CR-060 (NGG), 2024 WL 665944, at *3 (E.D.N.Y. Feb. 16, 2024).

15

his motion for a reduction in sentence under Amendment 821 is DENIED.

## III.  CONCLUSION

For the reasons discussed, Mr. Bello's motions for a sentence reduction under 18 U.S.C. § § 3582(c)(1)(A)(i) and 18 U.S.C. § 3582(c)(2), pursuant to Amendment 821 to the Sentencing Guidelines, are both DENIED.

SO ORDERED.

Dated:     Brooklyn, New York
           June 12, 2024

                                        s/Nicholas G. Garaufis
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge